IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GS HOLISTIC, LLC, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MZB SMOKE LLC, d/b/a IN AND § <br> OUT SMOKE, and HADI BAWA § <br> Defendants. § | No. 3:23-CV-01870-K |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a motion for default judgment against Defendants MZB Smoke d/b/a In and Out Smoke ("MZB") and Hadi Bawa, filed by Plaintiff GS Holistic, LLC ("GS"). (Dkt. No. 19 ("Mot.").)

United States District Judge Ed Kinkeade referred the motion to Magistrate Judge David L. Horan for recommendation, but the case was reassigned to the undersigned magistrate judge on August 23, 2024, by Special Order 3-354. (Dkt. Nos. 20, 21.) The undersigned enters the following findings of fact, conclusions of law, and recommendation that GS's motion for default judgment against Defendant MZB be **GRANTED**.

1

# I. BACKGROUND

GS originally filed suit against GNS Son's Inc d/b/a In and Out Smoke and Sohel Nathani. (*See* Dkt. No. 1.) After the Court granted GS's Motion for Leave to File Amended Complaint to Substitute Defendants, GS substituted Sohel Nathani for Hadi Bawa—the actual owner of the store—and corrected the name of the store from GNS Son's Inc to MZB Smoke LLC, the Amended Complaint contains no new claims or alleged facts. (Dkt. Nos. 9, 10, 11 ("Compl.").) Following this amendment, the Clerk's office re-issued summons, and Defendants were served on December 5, 2023. (Dkt. Nos. 13, 15.) GS asserts subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. 1338(a) because claims in this action relate to trademark infringement, counterfeiting, false designation, and unfair competition, each claim arising out of federal law.

GS holds a variety of trademarks relating to its vaping product named the "G-Pen." (Compl. ¶¶ 9-10.) According to the complaint, "For nearly ten years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials[.]" (*Id.* ¶ 9.) "Since 2016, GS has worked to build significant goodwill in the G Pen brand in the United States"; GS alleges that it has worked hard on building this goodwill by developing consumer recognition, attending trade shows, social media promotion, and collaborations with companies and celebrities. (*Id.* ¶¶ 16, 18.) The price of a G Pen vaporizer ranges from $70 to $250, while a non-G Pen vaporizer usually sells for $11 to $20. (*Id.* ¶ 20.)

GS accuses MZB and Bawa of selling counterfeit G Pen products bearing the G Pen trademark. (*Id.*) A GS investigator attended the In and Out Smoke Shop location and "observed that it had an excess of 15 vaporizers which displayed the G Pen trademarks." (*Id.* ¶ 29.) The investigator purchased a vaporizer with the G Pen marked for a total cost of $37.89, which turned out to be a counterfeit product. (*Id.*) GS accuses MZB and Bawa of the continued "offer for sale in commerce [of] the Counterfeit Goods" infringing on five registered trademarks:

(1) U.S. Trademark Nos. 4,390,645 (for the standard character mark "G Pen" associated with goods in international class 010);

(2) U.S. Trademark Nos. 5,368,594 (for the word mark "G Pen" and its logo associated with goods in international class 010);

(3) U.S. Trademark Nos. 5,405,360 (for the word mark "G Grenco Science" and its logo associated with goods in international class 010);

(4) U.S. Trademark Nos. 4,470,963 (for the standard character mark "Grenco Science" associated with goods in international class 010); and

(5) U.S. Trademark Nos. 4,462,090 (for the standard character mark "MicroG" associated with goods in international class 010).

(*Id.*; Dkt. No. 19 ("App.").)[1]

GS alleges trademark infringement in violations of Sections 32(1) and 43(a) of the Lanham Act, which are codified as 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), respectively. *See Rex Real Est. I, L.P. v. Rex Real Est. Exch.*, Inc., 80 F.4th 607, 616 (5th Cir. 2023). GS sued MZB and Bawa asserting two central counts: (1) trademark

---

[1] GS provided proof of trademark ownership by submitting the trademark registration certificates awarded by the U.S. Patent and Trademarks Office for each trademark. (App. 25, 29, 37, 40, 45.)

counterfeiting and infringement under 15 U.S.C. § 1114 and (2) false designation of origin and unfair competition under 15 U.S.C. § 1125(a). (Compl. 12, 14.)

Defendants have failed to participate in this litigation. On November 13, 2023, the Clerk issued summons to Bawa and MZB, and on April 4, 2024, both summonses were returned as executed. (*See* Dkt. Nos. 13, 15.) GS requested that the Clerk enter default as to MZB and Bawa. (Dkt. No. 16.) On April 24, 2024, the Clerk entered default against Defendants. (Dkt. No. 17.) And GS moved for default judgment on July 22, 2024. (Dkt. No. 19.) Defendants have not responded.

## II.  LEGAL STANDARDS

Fed. R. Civ. P. 55 (b)(2) governs the entry of a default judgment. A default judgment is available to a plaintiff who demonstrates the following: (1) the defendant was served with a summons and the complaint, and a default was entered because the defendant failed to appear; (2) the defendant is not a minor or an incompetent person; (3) the defendant is not in the military or subject to the Soldiers and Sailors Relief Act of 1940, 50 U.S.C. § 3931; and (4) if the defendant appeared in the case, the defendant was provided with notice of the default judgment application at least three days before the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, 3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (citing *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006)). In addition, the plaintiff "must make a prima facie showing of jurisdiction." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, 3:14-CV-2589-M-BN, 2016 WL 2856006, at *2 (N.D.

Tex. Apr. 18, 2016) (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001)).

The Fifth Circuit has set out a three-step process for a plaintiff seeking default judgment: (1) default by the defendant; (2) entry of default by the Clerk; and (3) entry of a default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 55(a); *PharMerica Corp. v. Paragon Healthcare Group, LLC*, No. 2:19-CV-196, 2021 WL 9274561, at *2 (N.D. Tex. Aug. 20, 2021).

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)); *see also Arch Ins. Co.*, 2013 WL 145502, at *2 (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (observing the Fifth Circuit's general disfavor of default judgments and preference to resolve cases on their merits). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted));

*see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

"A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id*. Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984).

A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well pled or conclusions of law. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Typically, damages are not awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Courts have developed a three-part analysis to determine whether to enter a default judgment against a defendant. *United States v. 1998 Freightliner Vin #:*

*1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).  First, in assessing whether the entry of a default judgment is procedurally warranted, courts consider several factors, including: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  Second, courts assess the substantive merit of the plaintiff's pleadings to determine whether there is a sufficient factual basis for default judgment.  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (finding that a plaintiff must plead sufficient facts to show it is entitled to relief).  Third, courts determine what form of relief, if any, the plaintiff should receive.  *See 1998 Freightliner*, 548 F. Supp. 2d at 384.

### III. ANALYSIS

As an initial matter, the undersigned must determine whether GS properly served MZB.  *See* Fed. R. Civ. P. 4(c).  Federal Rule of Civil Procedure 4(e) describes the process for serving an individual.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by "delivering a copy of the summons and of the complaint to the individual personally[.]"  Fed. R. Civ. P. 4(e)(2)(A).  Rule 4(h) describes the process for serving a corporation, partnership, or association.  Unless federal law provides otherwise or the defendant's

waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]" Fed. R. Civ. P. 4(h)(1)(B).[2]

Here, the return of service documents establish that the summons and complaint were personally delivered to Bawa on December 5, 2023. (Dkt. No. 15.) The return of service documents also establish MZB was served by personal delivery of the summons and complaint to its registered agent, Bawa, at the same time. (*See id.*) The return of service otherwise meets the requirement under Texas law. *See* Tex. R. Civ. P. 106, 107. Thus, GS effectively served MZB and Bawa in accordance with both Federal and Texas law. *See* Fed. R. Civ. P. 4(e); Tex. R. Civ. P. 106, 107.

Despite receiving proper service, the Court's docket and record show that neither MZB nor Bawa has filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Thus, the undersigned also finds that MZB and Bawa failed to timely plead or otherwise respond to the Complaint under the Federal Rules of Civil

---

[2] The Texas Business Organizations Code requires every domestic or foreign entity to maintain a registered agent in Texas. An entity's registered agent is an agent of the entity who may be served with process, notice, or demand required or permitted by law to be served on the entity. Tex. Bus. Orgs. Code § 5.201.

Procedure. *See id*. The Clerk entered default on April 24, 2024, against Bawa and MZB. Based on the foregoing, the Clerk's entry of default against MZB and Bawa was appropriate. (*See* Dkt. No. 17.)

### A. Default judgment is procedurally proper.

Because default judgments are highly disfavored, the Court must ensure GS has properly followed all procedures to be entitled to default judgment. The Court's analysis is framed by the *Lindsey* factors. *Lindsey*, 161 F.3d at 893. As explained below, the *Lindsey* analysis supports default judgment in favor of GS.

First, there are no "material issues of fact in dispute," as MZB and Bawa failed to answer the Complaint or otherwise appear before the Court or place any factual allegations is dispute. Second, MZB and Bawa's refusal to engage in the litigation process threatens to prejudice GS's rights. Nothing indicates MZB and Bawa would be unfairly prejudiced by default judgment considering they have chosen not to contest the allegations against them. Third, the grounds for default are clearly established given that GS served MZB and Bawa with the Complaint and summons, and MZB and Bawa failed to answer despite the warning that failure to do so could result in default judgment. Fourth, there is no evidence before the Court to suggest that MZB's or Bawa's silence is the result of a "good faith mistake or excusable neglect." Fifth, considering every other factor from *Lindsey* favors default judgment, the Court is not aware of any facts that would obligate the Court to set aside the default if challenged by MZB or Bawa. *See Lindsey*, 161 F.3d at 893.

B.  **Default judgment is substantively proper.**

Default judgments must be warranted procedurally and substantively. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). MZB and Bawa, by their default, are deemed to have admitted the well-pleaded factual allegations in GS's Complaint. *Nishimatsu Constr. Co.*, 515 F.2d at 1206 (citing *Ohio Cent. R.R. Co. v. Cent Trust Co. of N.Y.*, 133 U.S. 83 (1889)). A default judgment is unassailable on the merits but only as to the well-pleaded allegations that are presumed to be true. *Id.* As such, the Court must review the pleadings to determine whether they provide a sufficient basis for GS's claims for relief. *Id.* at 1206.

In conducting this analysis, courts look to the pleading requirements set out in Rule 8(a)(2). *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

This "low threshold" is less rigorous than under Rule 12(b)(6). *See Wooten*, 788 F.3d at 498 & n.3. Recognizing that "a defendant ordinarily must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

1. **Default judgment is appropriate for GS's trademark counterfeiting and infringement claim under 15 U.S.C. § 1114.**

To prevail on a trademark infringement claim under the Lanham Act, GS must show two elements: "(1) it possesses a legally protectable trademark and (2) [MZB and Bawa's] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotations omitted)). As noted above, GS has established ownership of U.S. Trademark Nos. 4,390,645 (for the standard character mark "G Pen"); 5,368,594 (for the word mark "G Pen" and its logo); 5,405,360 (for the word mark "G Grenco Science" and its logo); 4,470,963 (for the standard character mark "Grenco Science); and 4,462,090 (for the standard character mark "MicroG"). (Mot. 16-17; App. 25, 29, 37, 40, 45.)

GS also established MZB and Bawa's use of this trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *See Streamline Prod. Sys.*, 851 F.3d at 450. Courts asses the likelihood of confusion using a non-exhaustive list of "digits of confusion," which includes:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,] . . . [and] (8) the degree of care exercised by potential purchasers.

*Id.* at 453. Courts analyze these digits on a case-by-case basis; the digits may weigh differently from case to case. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). "Where a defendant uses an identical mark a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists." *Totalcare Healthcare Servs., LLC v. TotalMD, LLC*, 643 F. Supp. 3d 636, 646 (N.D. Tex. 2022) (quoting *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp 2d 532, 540 (S.D. Tex. 2013) (internal quotation marks omitted)). Here, GS has provided evidence that MZB and Bawa sold fake products bearing identical marks to GS's registered trademarks. (*See* App. 19-22.)

Under 15 U.S.C. § 1114, "any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action." 15 U.S.C. § 1114. MZB and Bawa offered the Counterfeit

Goods for sale without GS's consent. (Compl. ¶¶ 24-25.) The examples of products MZB and Bawa sold at their store, coupled with clear proof of trademark ownership, establish the substantive merits of GS's claim under the Federal Trademark Counterfeiting and Infringement claim.

### 2. Default judgment is appropriate for GS's false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

15 U.S.C. § 1125(a) prohibits the

> use [ ] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a). "As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'" *Matrix Essentials, Inc. v Emporium Drug Mart*, 988 F.2d 587, 592 (5th Cir. 1993). A court's likelihood of confusion analysis for federal trademark infringement claims applies also to a plaintiff's federal claim for unfair competition. *Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 397 F. Supp. 3d 847, 859 (N.D. Tex. 2019). The same evidence tends to establish both claims. *Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*, No. 3:11-CV-1762-O, 2023 WL 12125998, at *4 (N.D. Tex. Feb. 20, 2013). Per the above analysis, GS has established it is the legal owner of the five infringed-upon trademarks; GS additionally established likelihood of confusion by

demonstrating the Counterfeit Goods had marks identical to its registered trademarks.

## C.   GS is entitled to statutory damages and costs.

### 1.   Statutory Damages

GS has exercised its option to request statutory damages for each counterfeit mark pursuant to 15 U.S.C. § 1117(c) rather than actual damages. GS has requested statutory damages of $50,000 per infringing mark, for a total request of $250,000. (Mot. 5.) Per § 1117(c), where there is a counterfeit mark, the Court is authorized to award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). "Courts enjoy wide discretion in determining damages" under the Lanham Act. *McCune v. Zhongyiqun*, No. 4:22-CV-00604-O, 2023 WL 2912483, at *5 (N.D. Tex., Apr. 12, 2023). When assessing the amount of statutory damages, the undersigned is "mindful that the Lanham Act's statutory damages provision was designed to ensure adequate compensation and deter the use of counterfeit marks." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 695-96 (W.D. Tex. 2008).

GS's request for a total award of $250,000 is largely supported by testimony about the harmful effects that counterfeit products have had on GS's market for G Pen products nationally, (*see* App. 6-8), and by presentation of default judgment damages awards comparable to those its requests here, (*see* Mot. at 25-27). GS does not specifically engage the likely economic damage caused by these particular defendants, which it acknowledges was not extensive. (*See* Mot. at 22 ("While the

14

Defendants probably have not sold millions of counterfeit products, [they have] engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more.").)

Courts have imposed a broad range of statutory damages in cases involving comparable products. GS calls attention to numerous cases in which six-figure awards have been imposed in favor GS, some of them involving G Pen products. (*See* App. 132-34 (cataloging cases.)  *See also GS Holistic v. Pyramids Hookah Lounge, LLC*, No. 4:23-CV-872-P, 2024 WL 3223927, at *4 (N.D. Tex. May 13, 2024) (awarding $200,000 in statutory damages). But awards have not been uniformly so generous. Earlier this year, the court determined that a statutory award of $5,000—$1,250 per mark—for infringement of G Pen trademarks was adequate. *GS Holistic, LLC v. Kenny Gee's LLC*, No. 4:23-CV-628-O, 2024 WL 386157, at *10 (N.D. Tex. Jan. 8, 2024), *accepted*, 2024 WL 384930 (N.D. Tex. Feb. 1, 2024). And in comparable cases involving the sale of only one infringing product and observations of additional available products, courts have similarly arrived at more modest awards. *See, e.g.*, *GS Holistic, LLC v. Mitchell & Mitchell Enters. Inc.*, No. C23-5214JLR, 2024 WL 3744406, at *5-6 (W.D. Wa. Aug. 9, 2024) (awarding total of $2,000 statutory damages); *GS Holistic, LLC v. OH Wholesale, LLC*, No. 23-CV-1018, 2024 WL 1886730, at *4-5 (E.D. Wisc. Apr. 30, 2024) (awarding total of $20,000 statutory damages).

In this case, GS alleges that an investigator purchased one infringing product for $37.89 from the defendants and saw "an excess of fifteen" additional products

displaying the G Pen trademarks. (Compl. ¶ 29.) Considering both the compensatory and deterrent purposes of statutory damages and the conduct involved in this case, the undersigned finds that a statutory damages award of $37,500 is sufficient in this case. This amount awards $7,500 per trademark infringed.

### 2. Costs

GS has requested costs in the total amount of $402, consisting of the Court's filing fee. (Mot. 5.) Pursuant to 15 U.S.C. § 1117(a), GS may and should recover this amount.

### D. GS is entitled to injunctive relief and to the destruction of remaining infringing products.

Finally, GS requests injunctive relief under 15 U.S.C. § 1116 and the destruction of MZB and Bawa's remaining infringing merchandise under 15 U.S.C. § 1118. A party seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such a monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013). GS satisfied the elements necessary for a permanent injunction. First "[i]n a dispute over trademark infringement and unfair competition, when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm." *Liberty Burger Prop. Co. v. Liberty Rebellion Rest.*

*Grp., LLC*, No. 3:22-CV-00085-E, 2023 WL 349790, at *6 (N.D. Tex. Jan. 20, 2023) (internal quotations omitted).

Second, since "the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is difficult to pinpoint as compensable damages." *Id.* (internal citations and quotations omitted). Thus, GS has shown that damages alone are an inadequate remedy to MZB and Bawa's actions.

Third, "[w]hen balancing the harms to the plaintiff and defendant, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Id.* (internal citations and quotations omitted). Here, any harm MZB or Bawa may suffer from being forced to stop selling counterfeit GS lookalikes is minimal when compared to the possible harm to GS's reputation from the very same sales.

Lastly, "courts are inclined to grant injunctive relief as within the public's interest—in such disputes over trademark and unfair competition—because the Lanham Act is intended to protect the ability of consumers to distinguish among competing producers." *Id.* (internal citations and quotations omitted). Because MZB and Bawa have hampered consumer's ability to distinguish between counterfeit and authentic GS products, injunctive relief is in the public interest. The undersigned recommends that the Court enter an order permanently enjoining MZB and Bawa—including their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in

concert of participation—from further acts of infringement modeled after GS's request. (*See* Mot. 29.)

GS has requested the destruction of infringing products under 15 U.S.C. § 1118. Since GS has already demonstrated that an equitable relief is appropriate, and as such relief is statutorily warranted under 15 U.S.C. § 1118 the Court should order the delivery and destruction of the remaining infringing products. The undersigned concludes that an order should issue requiring Bawa and MZB, at their cost, to deliver to GS for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other items in their possession, custody, or control bearing any of the five trademarks at issue in this suit.

## IV. CONCLUSION

For reasons discussed, the undersigned **RECOMMENDS** that GS's motion for default judgment (Dkt. No. 19.) be **GRANTED**, and **DEFAULT JUDGMENT** be **ENTERED** in favor of GS against MZB and Bawa. The undersigned **FURTHER RECOMMENDS** the Court **AWARD** GS **$37,500 in statutory damages and $402 in costs**, **GRANT** GS's request for injunctive relief and **GRANT** GS's request of destruction of infringing products.

**SO RECOMMENDED** on October 18, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE OF RIGHT TO OBJECT**

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).